1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DREW H. RAY,

       Plaintiff,

     v.

CITY OF PUYALLUP, a municipal
corporation of the State of Washington,

       Defendant.

Case No. 04-5475

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT

     This matter comes before the Court on Defendant's Motion for Summary Judgment seeking dismissal of Plaintiff's claims for employment discrimination based on race.  After reviewing all materials submitted by the parties and relied upon for authority, the Court is fully informed and hereby grants the City of Puyallup's motion and dismisses Plaintiff's case for the reasons described below.

**INTRODUCTION AND BACKGROUND**

     On September 17, 2003, the Public Works/Development services Department of the City of Puyallup advertised two job openings for the position of Maintenance Worker I in the Collections. Division.  The job posting provided that some of the essential functions of this position included

ORDER - 1

unplugging and cleaning sewer and storm water lines, installing storm water systems, installing culverts, catch basins and dry wells, maintaining and repairing system components and equipment such as pumps, motors and controls, and learning the operation and function of a waste water system.  The selection process was advertised as establishing an eligibility list from which applications would be screened and finalists invited to participate in a written test.  Based on the test scores, finalists would be selected for oral interviews.

Candidates for positions with the City of Puyallup are not asked to provide information about their race in job applications.  Applicants are provided an option of completing an anonymous equal opportunity survey which includes information about their race.  Applicants are not asked to place their name on the surveys.  The surveys are detached from the employment application and the applications provided to the hiring department without the surveys or any race information about the candidates.  The City Human Resources (HR) Department compiles the information provided by the employment opportunity surveys and the surveys are then shredded.  The compiled data is retained by the HR Department for informational purposes only, and cannot be linked to actual candidates who provided the voluntary information.

Plaintiff Drew Ray applied for the open position and recalls filling out the employment opportunity survey.  Although Plaintiff does not recall whether he signed the survey with his name, he testifies that he does not think he would have put his name on the survey if it did not ask for a name. Plaintiff turned his application in at the HR Department counter and observed an employee remove the survey (affirmative action card) from the application.  Plaintiff testifies that the HR employee that took his application obviously looked at him and saw he was African-American.

The HR Department received approximately 291 applications for the two Maintenance Worker I positions.  The surveys were removed from the applications and the applications forwarded to the Public Works/Development Services Department for the hiring process.

Don Henry is the Wastewater and Stormwater Utility Supervisor for the City of Puyallup.  It

ORDER - 2

1  was his responsibility to review the applications, select the candidates for testing and interviewing,

2  and ultimately hiring the employees for the open positions.  It is not uncommon in his department to

3  have a large number of applicants meet the basic qualifications for an entry level position, but not to

4  test or interview all these candidates due to the large number of applicants.  Mr. Henry selected

5  approximately 50-60 of the most qualified applicants, based on the information provided in their

6  applications, and offered them the opportunity to submit to the skills test.  Mr. Henry did not receive

7  the survey or any race information about the candidates when selecting applicants for testing.  The

8  Plaintiff was not selected to take the test.

9        The first applicant who was hired worked in a similar position for another municipality public

10  works department.  He had experience in facility and equipment maintenance, and repaired sewer,

11  water, street and park facilities.  As it turned out, this hire is a Native American.

12        The second applicant hired had 21 years experience in facility maintenance, including the

13  installation, repair and rebuilding of pumps and piping systems.  He had designed and installed

14  complete water systems for large fish processing facilities and had completed the requirements for

15  certification and examination for wastewater treatment plant operator.  This hire turned out to be a

16  Caucasian over the age of forty.

17        In contrast to the two successful applicants, Plaintiff had experience in road maintenance

18  construction.  This consisted primarily as truck/equipment operator, with some experience in

19  cleaning out culverts during road maintenance projects. Plaintiff's application did not list any sewer

20  or pipe-fitting experience.

21        On, December 30, 2003, having received no response to his application, Plaintiff contacted

22  the HR Department and was informed he had not been selected to proceed in the hiring process for

23  testing and interviewing.  Through the course of subsequent inquires, the Plaintiff ascertained  that

24  the City of Puyallup did not have an affirmative action plan.

25        Plaintiff then commenced this action alleging disparate treatment race discrimination in

26  ORDER - 3

1   violation of Title VII, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and RCW 49.60; disparate impact in

2   violation of Title VII and RCW 49.60; discrimination in violation of Title VI; a violation of 23

3   U.S.C. § 182 by failing to maintain an affirmative action plan; and a deprivation of his Fourteenth

4   Amendment right to equal protection.  Defendant City of Puyallup moves for summary judgment of

5   dismissal contending Plaintiff cannot prove any of these claims.

6                       **SUMMARY JUDGMENT STANDARD**

7         Summary judgment is appropriate where there is no genuine issue of material fact and the

8   moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The moving party

9   bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex

10   Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the

11   opposing party must show that there is a genuine issue of material fact for trial.  Matsushita Elec.

12   Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).   A dispute as to a material fact is

13   "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

14   party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The opposing party may not rest

15   upon the mere allegations or denials of the moving party's pleading, but must present significant and

16   probative evidence to support its claim.  Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d

17   1551, 1558 (9th Cir. 1991).  For purposes of this motion, reasonable doubts as to the existence of

18   material facts are resolved against the moving party and inferences are drawn in the light most

19   favorable to the opposing party.  Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

20   Summary judgment is mandated where the facts and the law will reasonably support only one

21   conclusion.

22         **DISCRIMINATION UNDER TITLE VII - DISPARATE TREATMENT**

23         Motions for summary judgment in cases alleging failure to hire in violation of Title VII are

24   analyzed under the burden-shifting framework established in McDonnell Douglas Corp. v. Green,

25   411 U.S. 792 (1973).  Under that framework, a plaintiff must first establish a prima facie case of

26   ORDER - 4

1     discrimination. The burden of production then shifts to the defendant to show legitimate,

2     non-discriminatory reasons for defendant's action.  The burden then shifts back to the plaintiff to

3     show that the defendant's reasons were pretextual.  Despite this burden shifting, the ultimate burden

4     of persuading the trier of fact that the employer intentionally discriminated remains at all times with

5     the plaintiff.  Norris v. City and County of San Francisco, 900 F.2d 1326, 1329 (9th Cir. 1990).

6         In order to prove a claim of disparate treatment under Title VII based on a failure to hire, a

7     plaintiff must first establish a prima facie case of discrimination by showing: "(i) that he belongs to a

8     racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking

9     applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the

10    position remained open and the employer continued to seek applicants from persons of complainant's

11    qualifications."  McDonnell Douglas, at 802.  See also, Norris, at 1329-1330.  The proof necessary

12    for a plaintiff to establish a prima facie case is "minimal" and need not even rise to the level of a

13    preponderance of the evidence.  Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).  The

14    plaintiff need only offer evidence that "gives rise to an inference of unlawful discrimination," arising

15    either under the McDonnell Douglas presumption or by more direct evidence of discriminatory

16    intent.  Wallis, at 889.

17         Despite this low threshold, Plaintiff has not established a prima facie case because he has not

18    presented any evidence that "after his rejection, the position remained open and the employer

19    continued to seek applicants from person's of complainant's qualifications."  The undisputed

20    evidence shows that the successful candidates came from the same pool of approximately 291

21    applicants as the Plaintiff.  The City of Puyallup did not keep the application process open to new

22    applicants of Plaintiff's qualifications subsequent to his rejection.

23         More importantly, Plaintiff's assertions of race discrimination are nothing more than mere

24    allegation in light of the undisputed evidence that the hiring party, Supervisor Don Henry, had no

25    knowledge about the racial background of the candidates when he performed the screening process.

26    ORDER - 5

Even assuming that Plaintiff had made a prima facie showing of discrimination, Defendant has met its burden of coming forward with legitimate, nondiscriminatory reasons for not hiring Plaintiff.  McDonnell Douglas, at 803 (once a plaintiff establishes a prima facie case of discrimination, the burden of production then shifts to Defendant to articulate a legitimate, nondiscriminatory business reason for the employee's rejection).  See also, Miller v. Fairchild Indus., Inc., 797 F.2d 727, 731 (9th Cir. 1986).  Defendant provided evidence that the two hires were better qualified applicants than the Plaintiff.  The open positions required workers to clean and unplug sewer and storm water drains, install storm water systems, assist in installing culverts, catch basins and dry well and maintain and repair equipment used in the operation of these systems.  The applications of the two successful candidates demonstrated superior experience in performing these duties than the application of Plaintiff.

When an employer presents legitimate reasons for the employee's rejection, then the employee must "offer specific and significantly probative evidence that the employer's alleged purpose is a pretext for discrimination."  Schuler v. Chronicle Broadcasting Co., 793 F.2d 1010, 1011 (9th Cir. 1986).  A plaintiff may show pretext "either directly by persuading that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981).  "When evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate even though plaintiff may have established a minimal prima facie case based on a McDonnell Douglas type presumption."  Wallis, at 890-91.

Plaintiff has produced no meaningful evidence indicating either that Defendant's proffered explanation was false or that the City had a discriminatory animus towards him because he is an African-American.  Plaintiff simply asserts that he feels that he was discriminated against because he applied for a position and met all the qualifications.  He believes he should have had the opportunity

ORDER - 6

1    to participate in the testing and the interview process to get a job with the City.

2           An employee's subjective personal judgments of competence alone do not raise a genuine

3    issue of material fact.  Bradley v. Harcourt, Brace and Co., 104 F.3d 267, 270 (9th Cir.

4    1996);.Schuler v. Chronicle Broadcasting Co., Inc., 793 F.2d 1010, 1011 (9th Cir. 1986).

5           The Plaintiff has failed to meet the burden of persuasion and his disparate treatment race

6    discrimination claim is subject to dismissal.

7           Section 1981 claims are similarly analyzed using the legal principles under Title VII claims.

8    Manatt v. Bank of Am., 339 F.3d 792, 797-798 (9th Cir. 2003).  Accordingly, Plaintiffs 42 U.S.C. §

9    1981 claim will not be considered separately.

10                **DISCRIMINATION UNDER TITLE VII - DISPARATE IMPACT**

11          In order to make a prima facie case of "disparate impact" under Title VII, the plaintiff must

12   show that a facially neutral employment practice has a 'significantly discriminatory' impact upon a

13   group protected by Title VII.  Paige v. California, 291 F.3d 1141, 1144 (9th Cir. 2002); Moore v.

14   Hughes Helicopters, Inc., 708 F.2d 475, 481 (9th Cir. 1983).  This showing consists of two parts: the

15   plaintiffs must demonstrate 1) a specific employment practice that 2) causes a significant

16   discriminatory impact.  Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 656-67 (1989).

17   Statistical evidence is used to demonstrate how a particular employment practice causes a protected

18   minority group to be under represented in a specific area of employment (for example, hiring or

19   promotion).  The statistical analysis must show a disparity that is "sufficiently substantial" as to

20   "raise such an inference of causation."  Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994

21   (1988).

22          Plaintiff asserts that the test used by the Defendant in its hiring practice for the Maintenance

23   Worker I positions constituted a discriminatory employment practice.  However, there is no evidence

24   to show the administration of this test has caused a disparate impact on African-American applicants.

25   Thus, Plaintiff has not established a prima facie case of disparate impact.

26   ORDER - 7

1        **FOURTEENTH AMENDMENT RIGHT TO EQUAL PROTECTION**

2        To establish a violation of section 1983's equal protection guarantee, the plaintiff must show

3   that the defendants intentionally discriminated against him on the basis of his race.  Washington v.

4   Davis, 426 U.S. 229, 242 (1976); Cerrato v. San Francisco Community College Dist., 26 F.3d 968,

5   973 (9th Cir. 1994).

6        Plaintiff has presented no evidence to establish intentional discrimination.  Plaintiff's

7   subjective personal judgment that there must have been discrimination because he was not selected

8   to take the written test does not raise a genuine issue of material fact.  Bradley v. Harcourt, Brace

9   and Co., 104 F.3d 267, 270 (9th Cir. 1996).  This is particularly true in that there were approximately

10  291 applicants for the two openings.  In addition, Plaintiff cannot establish that he was similarly

11  situated to the two successful candidates.  Both had prior experience that made them more qualified

12  applicants.  There exist a rational basis for not selecting Plaintiff for testing and interviewing.

13  Plaintiff cannot maintain an claim for violation of his rights to equal protection.

14       **CLAIMS UNDER TITLE VI**

15       Plaintiff asserts a claim under 42 U.S.C. § 1983 alleging violations of Title VI.  Plaintiff

16  claims Defendant received federal funds yet failed to maintain an affirmative action plan.

17       In Alexander v. Sandoval, 532 U.S. 275 (2001) the Supreme Court inquiry was whether §

18  602 of Title VI of the Civil Rights Act of 1964 contained a private right of action.  Section 601 of

19  the Civil Right Act provides that "[n]o person in the United States shall, on the ground of race,

20  color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected

21  to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. §

22  2000d.  Section 602 authorizes agencies "to effectuate the provisions of [§ 601] ... by issuing rules,

23  regulations, or orders of general applicability." 42 U.S.C. § 2000d-1.  The Court in Sandoval held

24  private individuals may sue to enforce Section 601 only in instances of intentional discrimination.

25  Id., at 279-84.  This private cause of action does not include a private right of action to enforce

26  ORDER - 8

1    disparate-impact regulations promulgated under Title VI.  Id., at 293.  See also, Save Our Valley v.

2    Sound Transit, 335 F.3d 932 (9th Cir. 2003).

3        There is no provision in Title VI that requires a public agency to maintain an affirmative

4    action plan with hiring preferences for minorities as alleged by Plaintiff.  Nor has Plaintiff produced

5    any evidence of intentional discrimination.  Therefore, this claim will be dismissed.

6                                    **STATE LAW CLAIMS**

7        Plaintiff asserts two state law claims: race discrimination in hiring in violation of RCW 49.60

8    and disparate impact race discrimination in employment practices in violation of RCW 49.60.

9        In analyzing state law discrimination claims, Washington largely adopts the federal protocol

10   announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) for the analysis of Title VII

11   claims. Hernandez v. Spacelabs Medical Inc., 343 F.3d 1107, 1112 (9th Cir.2003)(citing Hill v.

12   BCTI Income Fund-I, 144 Wash.2d 172, 23 P.3d 440 (2001)).  As previously analyzed, Plaintiff has

13   failed to meet the burden of production to maintain a Title VII claim.  Thus, his state discrimination

14   claims also fail.

15       An additional basis for dismissal of the state law claims is the Plaintiff's failure to comply

16   with Washington's claim filing statute, RCW 4.96.010.-.020.  Pursuant to RCW 4.96.020(4),

17   individuals wishing to assert a tort claim against a local governmental entity must first file a claim for

18   damages with the municipality and wait 60 days to commence a legal action.  One of the purposes of

19   the claim filing statute is to allow local governments to investigate and remedy any potential claims

20   prior to or in lieu of entrance of those claims into the judicial system.  Medina v. Pub. Util. Dist. No.

21   1 of Benton County, 147 Wn.2d 303, 310, 53 P.3d 993 (2002). Although the legislature proscribed

22   that the "laws specifying the content for such claims shall be liberally construed so that substantial

23   compliance therewith will be deemed satisfactory," it made no such allowance for the procedure for

24   filing such claims.  The Washington courts have strictly construed the procedural requirements of

25   RCW 4.96.020.  Bosteder v. City of Renton,155 Wn.2d 18, 40, 117 P.3d 316 (2005).  See, e.g.,

26   ORDER - 9

1   Reyes v. City of Renton, 121 Wn.App. 498, 502, 86 P.3d 155 (2004)(Failure to strictly comply with

2   statutory filing requirements leads to dismissal of the action.); Sievers v. City of Mountlake Terrace,

3   97 Wn.App. 181, 183, 983 P.2d 1127 (1999)(Plain language of the statute requires dismissal even

4   when the results of doing so may seem unduly harsh.).

5        Here, the Plaintiff failed to file a claim for damages.  An assertion that his federal civil

6   complaint should serve as a claim for damages is insufficient as the claim filing statute requires that

7   the claim be filed 60 days prior to filing a civil lawsuit.  Plaintiffs letters to the City also fail to satisfy

8   the claim filing statute.  The failure to file tort claims with the city clerk's office, as required by city

9   ordinance, precludes a claimant's  subsequent lawsuit against city, even assuming that city had actual

10  knowledge of claims by virtue of residents' filing of claims with the city attorney and the public

11  utilities department.  Burnett v. Tacoma City Light, 124 Wn.App. 550, 558-60, 104 P.3d 677

12  (2004).  Having failed to comply with the claim filing statute, Plaintiff's state law claims are subject

13  to dismissal.

14                                       **CONCLUSION**

15        For the reasons set forth above, Defendant City of Puyallup is entitled to summary judgment

16  of dismissal of Plaintiff's claims in their entirety.

17        ACCORDINGLY,

18        IT IS ORDERED:

19        Defendant's Motion for Summary Judgment Dismissal [Dkt. #32] is GRANTED, and this

20  case dismissed in its entirety.

21  DATED this 6th day of March, 2006.

22

23                                       _____

24                                       FRANKLIN D. BURGESS
                                         UNITED STATES DISTRICT JUDGE

25

26  ORDER - 10